139 So. 771

**HENSHAW & McCOOK et al. v. YOUNT–LEE OIL CO. et al.**

No. 31435.

Jan. 4, 1932.

Rehearing Denied Feb. 1, 1932.

Beeman Strong of Beaumont, Tex., and Pujo, Bell & Hardin, of Lake Charles, for appellants.

Moss & Siess and Cline, Plauche & Thompson, all of Lake Charles, for appellees.

O'NIELL, C. J.

The plaintiffs are claiming a tract of land having an area of 5.07 acres. It has the shape of a triangle and is bounded on the north by Sec. 13, Tp. 12 S., R. 10 W., on the east by the range line between ranges 9 and 10 W., and on the southwest by a bayou, called Kelso bayou, or Black Lake bayou. As the land was not possessed by either the plaintiffs or the defendants, the suit was brought under the provisions of Act 38 of 1908, p. 38, providing for suits to determine the ownership of land not actually possessed by any one. The district court decided in favor of the plaintiffs and the defendants have appealed from the decision.

The plaintiffs claim that the land is a part of the irregular section 36, which formed a part of a Spanish grant, known as Burrell Franks claim, No. 269, confirmed by Act of Congress of May 24, 1828 (1 Laws of U. S. of a Local or Temporary Character, p. 343, 6 U. S. Stat. 382). The defendants claim that the land is a part of fractional section 24, in place, which fractional section was selected for the state under the Swamp Land Act of March 2, 1849 (9 Stat. 352), the selection being approved May 5, 1852. The state issued a patent to J. B. Watkins for all land north of the bayou in Sec. 24, Tp. 12 S., R. 10 W., on the 9th of May, 1883. The defendants have a complete chain of title from Watkins.

The Burrell Franks claim, No. 269, is described in the American State Papers (Gales & Seaton Edition), vol. 4, p. 140, as "a tract of land lying within the late neutral territory, situated on the west bank of Quelqueshue Lake, at a place called Hackberry Island, it being a small island surrounded by sea marsh, containing 640 acres."

In the Act of Congress of May 24, 1828, entitled "An act to confirm claims to lands in the district between the Rio Hondo and the Sabine Rivers, founded on habitation and cultivation," the Burrell Franks claim, which was confirmed by the act, is described under

the following headings: "No.—269; Name of Claimant—Burrell Franks; Situation of the Claim—Hackberry Island; Acres—640." In the second section of the act it was declared: "And the claims hereby confirmed shall be located under the direction of the register and receiver of the proper land office, in conformity with the legal subdivisions of the public surveys, so far as practicable, and shall include the improvements of the claimants respectively."

On the 21st of September, 1828, before Burrell Franks' claim was located under the direction of the register and receiver of the local land office, Franks sold the claim to Jacob Hampshire, by the following description: "A certain tract of land known as Hackberry, lying on the West side of Calcasieu Lake, bound [bounded] by a Byo [bayou] on the North." On the 16th of May, 1836, Hampshire sold the claim to George Young Kelso, describing the land as "lying on the west side of Calcasieu Lake, at a place known and designated by the name of Hackberry, or Hackberry Island, containing six hundred and forty superficial acres, and being the same settled by Burrell Franks and by him sold to the present seller." And on the next day, May 17, 1836, George Y. Kelso filed a written application, addressed to the register of the land office at Opelousas, La., to have the Burrell Franks claim, No. 269, located according to the second section of the Act of Congress of May 24, 1828; and, in his application, Kelso declared that his claim, or "settlement," containing 640 acres, was "situated on the Lake Calcasieu and bounded on the upper side by the Black Lake Bayou," and that the claim should be located on what was designated on the public or official survey as "sections No. 46, 47, 48, & 49, of T. 12 S.,

of R. 9 W., and Sections No. 36, 37, 38 and 39 of T. 12 S., of R. No. 10 West." Immediately following Kelso's application, and on the same sheet of paper, is the order, signed by John J. Taylor, register, and Jno. L. Daniel, receiver, of the land office at Opelousas, dated May 17, 1836, locating the Burrell Franks claim, No. 269, thus: "We have examined the Township Map No. 12 South, of Range No. 9 West, and find that the Island is represented thereon as set forth in the foregoing petition, and therefore, pursuant to the powers in us vested by the Second Section of the Act of Congress entitled 'An Act to Confirm Certain Claims to lands between the Rio Hondo and Sabine Rivers, founded on habitation and cultivation,' approved 24th May, 1828, we do hereby decide and direct that the said Claim shall be located on the 'Sections No. 46, 47, 48 and 49 of Township No. 12 South, of R. 9 West, and Sections No. 36, 37, 38 and 39 of Township No. 12 South, of R. 10 West."

Section 46 was the area between the continuations of the northern and southern side lines of section 36 across the range line due east to Lake Calcasieu; the northwest corner of section 46 being at the point of intersection of the range line with the south bank of Kelso bayou, or Black Lake bayou. In the same way, section 47 was the area between the continuations of the side lines of section 37 from the range line to the lake shore; section 48 was the area between the continuations of the side lines of section 38 from the range line to the lake shore; and section 49 was the area between the continuations of the side lines of section 39 from the range line to the lake shore.

The only official or government survey of these sections that was in existence when the

Burrell Franks claim received its official location and designation as sections 36, 37, 38, and 39 in Tp. 12 S., R. 10 W., and sections 46, 47, 48, and 49 in Tp. 12 S., R. 9 W., was the survey made by H. T. Williams, U. S. deputy surveyor, in 1833. He designated the area composed of the sections numbered 36 and 46 also as lot 1, and the area composed of the sections numbered 37 and 47 also as lot 2, and the area composed of the sections numbered 38 and 48 also as lot 3, and the area composed of the sections numbered 39 and 49 also as lot 4.

Williams' original field notes of his survey, photostats of which are in the record, show positively that the tract of land on which was located the Burrell Franks claim, No. 269, and which the surveyor, Williams, designated as lots 1, 2, 3, and 4, or sections 36 and 46, 37 and 47, 38 and 48, and 39 and 49, did not embrace the land which is now in dispute, and which formed the fractional northeast quarter of fractional section 24, on the north side of Kelso bayou, or Black Lake bayou. The field notes are as follows: "Lots fronting on the West bank of Calcasieu Lake, in Township 12, Ranges 9 & 10. Beginning at a post on the upper end of Hackberry Island, from which a Hackberry tree bears S. 30 E., ran upper side line West 18.50 to post on Black lake bayou, where the range line crosses it. *Thence with traverse of bayou N. 82 W. 10.40, N. 42 W. 8.50 to line on lower side of Sec. 13 T. 12, R. 10.* Thence with line West 21.00 to corner on black lake bayou, corner to Lot 1 & Sec. 13. Thence with bayou back of Lot 1, S. 40 W. 10.00," etc. We have italicized the line of courses and distances following the traverse of the southwest bank of the bayou, from the range line to the southern boundary

of section 13, because these courses and distances show, beyond any doubt, that the tract of land on which the Burrell Franks claim was located did not include the triangle, now in dispute, on the north or northeast side of the bayou, and forming the fractional northeast corner of what was left of section 24, in place. The map itself conforms with the field notes.

The southern boundary line of section 13, which is the northern boundary line of the tract in dispute, was surveyed by Williams in connection with sections 1, 2, 11, 12, and 14. Surveying southward from the northeast corner of the township, and following the range line, which had been located in the survey of Tp. 12 S., R. 9 W., when the surveyor reached the third mile post, which marks the southeast corner of section 13, he proceeded thus, according to his field notes: "West from 3rd mile post between Sec. 13 & 24, 13.76 to Black lake bayou. Erected mound, set post and coal, 16.00 to opposite bank, erected mound, deposited coal and set post. 37.00 Corner to Lot 1 & Sec. 13 on Black Lake bayou." The important fact stated in these field notes is that the south boundary line of section 13, from the southeast corner of the section to Black Lake bayou, was the north boundary line of section 24. But some one, at a later date, drew a pencil line through the figures 24, and with the pencil wrote the figures 36 above the figures 24, which were in ink. The register of the land office testified that he had no knowledge as to when or by whom this alteration was made. There is no evidence, or serious contention, that any one had authority to make the alteration; and it is proven that the pencil figures, 36, are ap-

parently not in the same handwriting as the figures 24, or the other figures which were made by the surveyor, Williams, with ink.

The unauthorized changing of the figures, from 24 to 36, in the field notes of the survey of the south line of section 13, is what brought about this lawsuit. In 1881, when the owners of the land embraced within the Burrell Franks claim, No. 269, applied to the general land office at Washington for a patent for the land, the surveyor general requested the surveyor of the New Orleans land office, O. H. Brewster, to prepare and transmit to the general land office a plat and descriptive notes of the Burrell Franks claim, No. 269, to be annexed to the patent; and Brewster, in making the plat and descriptive notes, was evidently misled by the alteration of the figures, from 24 to 36, in the Williams field notes. Brewster therefore drew the lines thus: Beginning at the northeast corner of section 46, on the lake shore, he ran west 18.50 ch., as Williams had done, to the point where the range line intersects the south bank of Black Lake bayou; but, then, instead of following the traverse of the bayou, N. 82 W. 10.40 ch. and N. 42 W. 8.50 ch., to the south line of section 13, as Williams had done, Brewster followed the range line, north, across the bayou and to the southeast corner of section 13, and thence west, following the south line of section 13 to the bayou, etc. The error was not corrected, and perhaps not discovered, at the general land office, and therefore the map and descriptive notes, annexed to the patent, erroneously included the small triangle, which is now in dispute, as a part of section 36, when, in reality, it was the fractional N. E. ¼ of fractional section 24, in place, according to the Williams survey, the

only government survey ever made of these sections. It is said in the brief for the plaintiffs, appellees, that Williams did not survey this fractional N. E. ¼ of fractional section 24. But the fact is that he surveyed all of the boundaries. He surveyed the south or southwest lines when, in surveying section 36, he followed the travers of the bayou, from the range line, N. 82 W. 10.40 ch. and N. 42 W. 8.50 ch., to the south line of section 13; he surveyed the east line of fractional section 24 when he surveyed the range line; and he surveyed the north line of fractional N. E. ¼ of fractional section 24 when he ran the line from the third mile post, West, to Black Lake bayou; which line he said was the line between sections 13 and 24.

The district court did not hold, nor do the plaintiffs contend, that O. H. Brewster, as surveyor general of Louisiana, had authority to do anything more than to prepare a map and descriptive notes of the Burrell Franks claim, according to the Williams survey and field notes. The plaintiffs contended and the district court held that Williams made a mistake when he said, in his field notes, that the line running West from the third mile post to the bayou was the line between sections 13 and 24, and that he intended to say that the line ran between sections 13 and 36. But that cannot be so, because, in surveying the north boundary of section 36, Williams followed the traverse of the south bank of the bayou, from the range line to the south line of section 13, thus omitting from section 36, and leaving in section 24, in place, the area which is now in dispute. The bayou, at the place where it crosses the range line, according to the figures on the survey, had a width of 1.20 chains, say 80 feet, and it is described

as a navigable bayou, having a depth of 7 to 9 feet. Hence, the land in dispute, being on the north side of the bayou, could not have been a part of Hackberry Island, on which the Burrell Franks claim was located. It would make no difference if it should be assumed that the statement of Williams, in his field notes, that the south line of section 13 from the range line to the bayou was the north line of section 24, was an inadvertence on his part. That part of the south line of section 13 is the north line of section 24, not because it was so said in Williams' field notes, but because the field notes show also that the north line of section 36 followed the traverse of the bayou, from the range line to the south line of section 13. That is the reason why the land in dispute, being on the north side of the bayou, is not a part of section 36.

The area of the Burrell Franks claim is declared in the patent to be 653.27 acres, which is exactly the area of sections 36, 37, 38, 39, 46, 47, 48, and 49, as shown on the Williams survey; and a survey made for the purpose of this trial showed the area to be 652.56, or only .71 of an acre short. The patentee had to pay $1.25 per acre for the difference of 13.27 acres, between the area given in the grant, 640 acres, and the area on which the claim was located by the register and receiver of the Opelousas land office. Hence, nothing was paid for the area now in dispute.

All of the deeds in the plaintiffs' chain of title, subsequent in date to the location of the Burrell Franks claim, show that section 36 was all on the south side of the bayou, which formed the north boundary of Hackberry Island. For example, in the sale from the succession of George Y. Kelso, deceased, to Treville Granger, on the 11th of September, 1854, the land was described as bounded "on the North by the bayou that empties into said Big Lake from Black Lake," etc. In the sale from Treville Granger to Madam Arsene Bonnet, on the 27th of June, 1862, the land was described as bounded on the north by the bayou that empties into Grand Lake from Black Lake. On the 12th of March, 1883, the heirs of Arsene Bonnet, deceased, had a survey made by a surveyor named Thomas Kleinpeter, for the purpose of a partition, and in the proces verbal the land is said to be bounded "North by bayou of Black Lake." And the map annexed to the act of partition shows that section 36 did not extend beyond the bayou. The act of partition was made after the patent was issued and in the act it was said that the area of the tract was 1653.27 [meaning 653.27] acres, "as it is recited in the patent," etc.

When the patent was issued for the land covered by the Burrel Franks claim, the land now in dispute belonged to the state, by virtue of the selection and approval under the Swamp Land Act of March 2, 1849, and the state was not divested of her title by the error made in describing the land for which the patent was issued.

The judgment appealed from is set aside, and the plaintiffs' demands are rejected, and their suit is dismissed at their cost.